UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

    - v. -

VICTOR CHANI,
    a/k/a "Benaceur Chani,"
AHMED CHOULLAM, and
PAUL GALINSON,

           Defendants.

05 Cr. 523 (LTS)

<u>MEMORANDUM IN SUPPORT OF MOTION TO SUPPRESS STATEMENTS</u>

    Pursuant to the Fifth Amendment to the United States Constitution, <u>Miranda v. Arizona</u>, 384 U.S. 436 (1986), and its progeny, and following a Court hearing on Defendant's Motion to Suppress Statements held on February 14, 2008, the Defendant, Ahmed Choullam, submits this memorandum in support of said motion, and requests that this Court suppress the Defendant's post-arrest statements, including, but not limited to statements made to any officer, agent and/or agency, involved in his arrest and/or subsequent detention.

<u>FACTS</u>

    The Defendant was arrested on October 30, 2006, in Queens New York.  Upon his arrest, he was handcuffed and transported to DEA headquarters; he was processed by Agent Grace Wisniewski, who fingerprinted, photographed, and gathered his biographical information.  While Agent Wisniewski processed the Defendant, and while she was on scene at the arrest, she did not Mirandize the

Defendant personally; rather, she witnessed Detective Mike Ryan administer the Miranda Warnings by reading the same to the Defendant from a card.  See Transcript of Suppression Hearing (February 14, 2008), pp. 9-10.  Agent Wisniewski testified that Mr. Choullam was read the warnings in English and further, that Mr. Choullam understood his rights, and waived the same.  Id. at 11.  The Defendant testified that he did not understand that he could have a lawyer present during questioning, and that he did not knowingly waive is rights.  See generally, Tr., pp. 61-63, 70-71.  The Defendant is Moroccan, and he is not fluent in English.  He was not afforded an interpreter during questioning, or during the Miranda warnings.  He was not asked whether he needed an interpreter by any agent/officer, in spite of the fact that said agents/officers knew he was Moroccan, and that he spoke with an accent.

Legal Analysis

In determining whether a statement made by a criminal defendant is admissible in the Government's case in chief, the Supreme Court of the United States held that "[p]rior to any questioning, the person must be warned that he has the right to remain silent, that any statement he does make may be used as evidence against him, and that he has the right to presence of an attorney, either retained or appointed." Miranda v. Arizona, 384 U.S. 436, 444 (1966).  Self incrimination, after Miranda, would, at minimum, not be uninformed.  As noted in Doyle v. Ohio, 426

2

U.S. 610, 617 (1976):

> "The warnings, mandated by [Miranda] as a prohpylactic means
> of safeguarding Fifth Amendment rights . . . require that a
> person taken into custody be advised immediately that he has
> the right to remain silent, that anything he says may be
> used against him, and that he has aright to retained or
> appointed counsel before submitting to interrogation

If the Government desires to use a Defendant's statements
pursuant to a waiver of the Miranda rights, then it bears the
burden of proving by a preponderance of the evidence that such a
waiver was a valid relinquishment of said rights.  See  U.S. v
Ramirez, 79 F. 3d 298, 304 (2d Cir. 1996); U.S. v. Villegas, 928
F. 2d 512, 518 (2d Cir. 1991).

    In the case at bar, the Government's version of a valid
waiver comes in the form of an "answer in the affirmative," and
if taken as true, several conclusory statements from Agent
Wisniewski, as well as two other officers, noting simply that
"he waived," according to their impressions.  This explanation,
however, is insufficient to establish a valid waiver.

    To demonstrate the valid waiver itself, the Government must
prove that "the waiver was made voluntarily; and . . . the waiver
was made knowingly and intelligently.  See U.S. v. Male Juvenile,
121 F 3d 34, 38 (2d Cir. 1997), because, as the Court noted in
Moran v. Burbine, 475 U.S. 412, 475 (1986) (citations omitted):
"Only when the totality of circumstances surrounding the
interrogation reveal both an uncoerced choice and requisite level
of comprehension may a Court properly conclude that Miranda

3

rights have ben waived."   Here, even if uncoerced, the Defendant
testified that he did not comprehend his rights, and that he
would not have answered questions if he knew his answers could be
used against him—generally, that he did not understand everything
that was even being said to him.   See generally, Tr. pp. 61-62,
70 -72. Testimony established through both witnesses that Mr.
Choullam was Moroccan, and that his native language was not
English.   Coupled with the fact that he has no prior criminal
record, or other experience with the judicial system, and that he
intimated a lack of understanding to the authorities, Mr.
Choullam's language barrier contributed greatly to his inability
to properly understand what rights he had, and certainly, what
rights he purportedly waived.   At no time did the testimony of
Agent Wisniewski establish that Mr. Choullam gave an "express
indication that he understood his constitutional rights."   People
v. Harris, 115 A.D. 2d 619, 496 N.Y.S. 2d 476, 477 (N.Y.A.D. 2d
Dept., 1985).

     And while the Second Circuit has held that the existence of
a limited language barrier alone does not necessarily preclude a
finding of a knowing and intelligent waiver, U.S. v. Ho, 930 F.
Supp. 858, 862 (W.D.N.Y. 1995), other Circuits have been clearer
about the interplay between language barriers and a Defendant's
ability to knowingly and intelligently waive. See e.g., U.S. v.
Garibay, 143 F. 3d 534, 537-40 (holding invalid waiver where
Defendant had difficulty understanding English and warnings

4

recited by Police only in English).  See also, U.S. v Short, 790 F. 2d 464, 469 (C.A. 6 1986) (stating that defendant's *limited comprehension of English cast substantial doubt upon validity* of Defendant's Miranda waiver)(emphasis added).  In fact, Defendant in Ho, supra, cited United States v. Kim, 803 F.Supp 352 (D. Haw. 1992), aff'd 25 F.3d 1426, cert. denied, 513 U.S. 1030, 115 S.Ct. 607, 130 L.Ed.2d 517 (1994), for the proposition that suppression is warranted where a defendant does not have sufficient grasp of the English language to grasp his Miranda rights; two statements were suppressed because the Government failed to demonstrate that they were sufficiently accurate in light of defendant's limited understanding of English.

The statements introduced by the Government in this case include "false exculpatory" statement, which are unexplained in terms of the questioning that led Mr. Choullam's uttering such statements; clearly, Mr. Choullam's langauge barrier casts doubt upon his ability to understand his rights, knowingly waive his rights, and the quality of any statement he did make in English to the authorities.

In Green v. Scully, 850 F.2d 894, 902 (2d Cir. 1988), the Court confirms a "totality of the circumstances" approach to determining a valid waiver. Only where the "totality of the circumstances surrounding the interrogation reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the Miranda rights have been

5

waived." Moran v. Burbine, supra, 475.  The factors that must be considered include (1) the characteristics of the accused, (2) conditions of the interrogation, (3) the conduct of law enforcement officials.  See U.S. v. Zerbo, 1999 WL 804129 at *8 (S.D.N.Y.).  The relevant characteristics of the individual are his experience and background, together with the suspect's youth and lack of education or intelligence.  Id.  Ultimately, in order for there to be a valid waiver, the defendant must have "a full awareness of the right being waived and of the consequences of waiving that right."  U.S. v. Jaswal, 47 F 3d 539, 542 (2d Cir. 1995).

In this case, the Defendant's language barrier, considered against the backdrop of having never been arrested before, having been arrested and swooped up from the street by the DEA and brought to headquarters without even an inquiry as to whether or not his accent laden English warranted the consideration of an interpreter, all bode in favor of invalidating his alleged waiver.  While specifics of language, or body language, or other mannerisms may shed light upon the Defendant's understanding, the record before the Court is devoid of the same-the record is limited to first and second hand conclusory statements that Mr. Choullam "answered in the affirmative" and "waived."  On the analysis contemplated in Burbine, Zerbo, and Jaswal, Mr. Choullam's circumstances indicate that an invalid waiver was procured or assumed, prior to his having made statements.

6

The hearing testimony revealed that Mr. Choullam was from Morocco, and that English was not his native language.  Tr. p. 18. Detective Wisniewski testified that Mr. Chollam answered processing questions regarding his name, family members, date of birth, and "information such as that," in English.  Id. Regarding the response that Mr. Choullam gave to officers upon her having witnessed him being Mirandized, however, her direct testimony was conclusory at best, lending little insight into Mr. Choullam's ability to understand the more complex concepts contained in the  Miranda warnings.  Her testimony was as follows:

> Q.   After . . . the Miranda rights . . . what did Mr. Choullam say with respect to those rights?
>
> A.   He waived – understood his rights and waived them and he proceeded to talk to us
>
> SEEGER: Objection . . .
>
> COURT: ... would you rephrase to ask what he said.
>
> * * * * *
>
> Q.   What if anything did Mr. Choullam say . . ..
>
> A.   I don't recall his specific words that he used, but he answered in the affirmative that he understood his rights and proceeded to speak to us after that.

Tr. at pp. 10-11.  While the Agent answered swiftly and decisively, that Mr. Choullam understood and waived, she couldn't recall his words; in addition, answering "affirmatively" does little to explain how one "waived" his rights, unless the mere fact that the Defendant proceeded to speak to Agents could be

7

dispositive of this issue.  The Agent also testified that Mr. Choullam was able to respond to a set of Consular Notification questions, which were read to Mr. Choullam by the Agent in English.

Summarizing the line of questioning posed by the Government on direct, the Agent's testimony might be characterized as establishing that Mr. Choullam answered some biographical questions, and Consular Notification questions, which were read to him, in English, and that he must have understood his <u>Miranda</u> warnings because in response to the same Mr. Choullam "answered in the affirmative" and proceeded to speak to officers/agents in English.  <u>Id.</u>  Furthermore, that Mr. Choullam never asked for an Arabic Interpreter, or told the Agent(s) that he "had difficulty understanding what [they] were asking him or telling him."  Tr. pp. 13-14.  His conduct, coupled with his failure to take affirmative steps to communicate an inability to understand his rights, or otherwise ask for an interpreter, is essentially what the government relies upon to establish that Mr. Choullam was given <u>Miranda</u> warnings that he understood, and that he knowingly and intelligently waived such rights.

Upon cross examination, the Agent's impression of Mr. Choullam's English, and arguably his ability to understand, was more revealing.  She was asked if she noticed that Mr. Choullam had an accent:

A: Yes, I did.

8

Q; Were you aware he was from Morocco?

A; Yes.

Q.  Were you aware that he spoke Arabic?

A.   I didn't ask him what his native language was, but

* * * * *

    it was *clear that it was not English*

Tr. at p.18 (emphasis added).  Notably, this Agent testified that it was *clear* to her that Mr. Choullam's native language was not English, at a time prior to him offering statements alleged to have been made subsequent to his waiver.  She noticed his accent and made the native language observation during her gathering of the defendant's biological information.  As she indicated on direct:

> A:   Part of processing, including taking biographical information from Mr. Choullam, fingerprints, photographs, issuing <u>Miranda</u> rights, *and after that taking post arrest statements*.
>
> Q:   Let's break it down.  Let's start with the last thing. You said that Mr. Choullam was read his <u>Miranda</u> rights.

* * * * *

> Q:   In what language . . .
>
> A:   In English.
>
> Q;   What did Mr. Choullam say after he was read his <u>Miranda</u> rights?
>
> A:   I don't recall . . . but he answered in the affirmative that he understood his rights and *proceeded to speak to us after that.*

Tr. P. 10 (emphasis added).  At no time does Agent Wisniewski, or

any other law enforcement agent ask Mr. Choullam whether he
needed an interpreter, or whether or not he understood his
Miranda warnings; to the contrary, in spite of her clarity
regarding Mr. Choullam's native language not being English, Agent
Wisniewski easily concluded that the Miranda warnings given to
him by her fellow investigators in English, and the statements
that he made following in English, were understood and made
intelligently.

     Surely the clarity with which Mr. Choullam's English was
ferreted out as a non native language, acts as a red flag to an
agent who is about to put Miranda warnings to him.  No other
Agent testified at the hearing, however, if the evidence led is
that Mr. Choullam's English was clearly not his native language,
the fact that he didn't ask for an interpreter, or say he didn't
understand his rights, should hardly be construed against him—he
may not even have been able to communicate the same properly, let
alone have attempted to do so with full understanding of the
same.

        What is telling on the issue of waiver, is that the
Government's witness was virtually unable to recall, describe, or
otherwise explain, with any specific reference whatsoever, the
*manner* in which the Defendant demonstrated a knowing waiver of
his Miranda rights.  But for a general conclusory impression, no
specific wording, or mannerism, could be recalled by Agent
Wisniewski, either by her own experience, or through her

conversations with other agents present for the alleged waiver.

For example, when asked whether Detective Ryan spoke to her about Mr. Choullam's <u>Miranda</u> warnings, Agent Wisniewski states as follows:

    A:    [Ryan stated] that he understood his rights and waived
          his rights.
    Q:    Did he tell you how he did that?
    A:    No, he did not.
    Q:    Did he talk with any specific body language?
    A:    No.

Tr. p. 38.  Later, with regard to the other Agent present, Agent Wisniewski stated that she spoke to Special Agent Galbadis, who told her that the Defendant, in response to his <u>Miranda</u> warnings, "answered in the affirmative."  <u>Id.</u>, p. 43.  However, "he did not tell me any specific wording that was used."  <u>Id.</u>  In the same line of questioning, Wisniewski states that Galbadis told her: "[just that], that he waived his rights."  <u>Id.</u>, p. 45.  But again:

    Q:    Did he tell you how that occurred, what words were
          used?  How he manifested such affirmation?
    A:    No.
    Q:    . . . other than the conclusory statement "he waived,"
          you can't tell us anything else about what Galbadis
          knows in terms of Mr. Choullam's waiver, is that fair
          to say?
    A:    That is fair to say

Other than confirming conclusory statements made to her by these two other agents/officers, Agent Wisniewski's testimony does little to explain how Mr. Choullam's waiver was manifested, from their perspective.  This would come as no surprise, against the

backdrop of the fact that she was present during the same warnings and the same alleged waiver, as her fellow investigators.  Accordingly, the hearsay evidence permitted in this Suppression proceeding, does little to bolster, or explain the testifying witness's account of Mr. Choullam's alleged waiver.

Thus, the evidence before the Court regarding the waiver is only as reliable as Agent Wisniewski's direct observations.  Her inability to recall any specifics, cannot be cured by what the other officers "told her;" at least not under the facts and circumstances of this case.  In short, her inability to recall limits the weight this Court should attribute to her fellow officers' alleged "general impressions," as well as her own.

Regarding her own observations, Agent Wisniewski is also limited on recall, to conclusory statements about how Mr. Choullam manifested his waiver.  For example:

> Q:  [I]n your own words, based on your experience with Mr. Choullam, how [did] he manifest a knowing waiver of his Miranda [rights]?
> A:  I don't recall any specific words that he used or any body mannerisms that he used, but I know that he responded in the affirmative, that he understood and that he waived, and then we proceeded with questioning.
> Q:  So with respect to the specific element of a waiver, can you tell me in your own words how Ahmed Choullam knowingly waived . . . Miranda?
> A:  *Whatever verbal answers* that he provided at that time, which I don't know his exact words.

Tr., p. 48 (emphasis added).  Ultimately, the Government's only witness, relays the conclusory statements of the other

agents/officers involved, and cannot testify to any specific aspect of the Defendant's waiver whatsoever, including via her own observations.  As she stated even in response to Mr. Choullam's response to the warnings having been read in English to him by Officer Ryan in her presence: "I don't recall any mannerisms."  Id., p. 50.

The Defendant, Ahmed Choullam, who was assisted by the Arabic Interpreter throughout all proceedings before this Court, testified forthrightly, that he speaks English, but that his understanding is limited.  He testified on the stand in a non-evasive manner, that:

> A:   [T]hey asked me questions, but I didn't know why they
>      brought me into this location, and I didn't understand
>      what they were really talking about . . . I believe
>      that I needed an attorney at that time, but they did
>      not tell me that.

Tr., p. 70.  If Mr. Choullam's position is even colorable, and a language barrier exists, it is not inconceivable that he recalls differently than Agent Wisniewski.  He also testified on direct examination by Counsel as follows:

> Q:   Did you understand that . . . you could say "no" to the
>      police, that you did not have to answer their
>      questions?  Did you understand that?
> A:   I said to them "no," I don't understand, and they said
>      how come you don't understand, this is a very simple
>      question.
>                          * * * * *
> Q:   Did you know that you could call a lawyer, that you
>      were allowed to have a lawyer at [the] time [you were
>      being questioned]?
> A:   No, I didn't know . . . they asked me what language [I
>      spoke] and I said to them I speak Arabic.

13

Tr., pp. 70-71.  Mr. Choullam could have recalled much more on the subject matter of his own understanding, if he were inclined to be inventive or creative with the Court, especially since there is no evidence before the Court which obviously controverts what he relays as his understanding-and especially in light of the Government witness's own lack of recall pertaining to Mr. Choullam's specific responses, or manifestations.  "Whatever words he used . . ." are just as easily filled in by Mr. Choullam's recall; if his testimony were credited as that which cannot be recalled by Agent Wisniewski, the Court's task would be very simple-decide whether such testimony is sufficient to demonstrate the absence of a knowing waiver.

Accordingly, because this hearing is about Mr. Choullam's ability to understand, and there is perfectly clear evidence of a language barrier, his account does not imply that Agent Wisniewski's testimony is false-his account cannot be pitted against the credibility of what Agent Wisniewski cannot recall. If the words that were used by the Defendant in response to the warnings included a garbled attempt to convey a misunderstanding, or some other sign that Mr. Choullam did not knowingly waive his Miranda rights, or otherwise did not really wish to incriminate himself, then the fact that the Government's witness cannot recall such words, or mannerisms, does not give rise to the conclusion that, since Agent Wisniewski is a credible witness, and she is telling the truth, that Mr. Choullam's account is

14

erroneous, or that his testimony lacks credibility.

To discount anything that might be attributed to the Government's misunderstanding of a waiver, based upon a failure to consider whether the defendant's account might lie somewhere in the realm of the specifics that cannot be recalled by a Government witness, belies the very notion that valid waivers and proof thereof, rests with the Government.  In short, the Government cannot benefit from what their witness cannot recall, where a significant portion of the Defendant's account, and his own proof may, as a result of a language barrier, be found in statements that cannot be recalled by the Government witness.

Imagine a dialogue, the specifics of which cannot be recalled, where ultimately, yet hypothetically, Mr. Choullam says "yes" to the question of whether he understands, and "yes" to the question of whether he waives his rights.  If what cannot be recalled by the Government's witness is relevant to a determination of the Defendant's understanding, and his knowing waiver of Miranda rights, both he and the Government witness can be telling the truth, at the same time as the Defendant's waiver is "unknowling."  For example:

        Defendant:      I don't understand everything you're saying,
                        I speak Arabic (accent noted-knowledge that
                        Defendant is Moroccan).

        Agent(s)        Why, it's a simple question, do you
                        understand, do you want to answer our

questions?

Defendant:      Yes.

In this hypothetical dialogue, Mr. Choullam's account is easily
reconciled with Agent Wisniewski's testimony.  She can testify
that he answered in the affirmative, and he can testify he didn't
understand, and wouldn't have answered questions if he knew his
answers could be used against him.  The possibility of such a
dialogue, and reconciliation of the testimony of both the Agent
and the Defendant, in a similar manner, accounting for the
Agent's lack of specific recall, should be considered as a viable
alternative to one which simply forces acceptance of the
credibility of one witness to the exclusion of the other.


## CONCLUSION

Clearly the Government bears the burden of proving a knowing
valid waiver by a preponderance of the evidence.  This cannot
mean a "minimal" amount of evidence which includes a general
conclusion, where specific recall is what is actually required.
Here, the testimony by one Government witness was that Mr.
Choullam waived—she didn't recall how he did so, or how such a
waiver manifested itself, but he "answered in the affirmative,"
according to conversations she had with other agents.
Ironically, this Witness was there during the Miranda warnings to
see the same interaction as her fellow investigators.  Moreover,
she had concluded that English "clearly" was not the Defendant's

16

native language based on his responses to her during processing, and based upon his accent.  Considering that the law requires a full awareness of the rights, and the consequence of waiving the same, the evidence must reveal more than conclusory statements couched in terms of direct observations (I observed him waive knowingly–but I can't say how or what he said), or hearsay statements couched in the same terms.

Mr. Choullam is a Moroccan, whose native language is not English.  He indicated that he didn't understand what the agents were asking him about, or why he was brought to the station in Manhattan.  He stated that he did make statements to the police regarding his lack of understanding–this is uncontroverted evidence before the Court, since no specific statements were recalled by the Government's only witness.  No specific mannerisms were recalled either.  On a totality of the circumstances approach, this Court would have to conclude that "answering in the affirmative," satisfies the test for a valid waiver, without as much as one colorable explanation as to how this Defendant "knowingly waived," or how his knowing waiver might otherwise have been manifested.  Clearly, this was no robotic exchange–"you have the right to remain silent, etc."–"yes I understand"–"do you waive"–"yes" (or other behavior not recalled manifesting "affirmation").

The Court should suppress the Statements of Ahmed Choullam as the product of an invalid waiver of Miranda, especially in

light of the fact that Mr. Choullam's language barrier seriously

calls into question the legitimacy or understanding of the

statement(s) he is even alleged to have made.

      Dated:    Stamford, CT

          February 26, 2008

                        Respectfully submitted,

                        _____

                        Stephan E. Seeger (SS8460)
                        Counsel for Ahmed Choullam
                                27 Fifth Street
                            Stamford, CT 06905

MICHAEL J. GARCIA
United States Attorney for the
Southern District of New York
Through:
Glen G. McGorty
Jeffrey A. Brown
Margaret Garnett
Assistant United States Attorneys
Attorneys for the United States

Peter Guadagnino, Esq.
50 Court Street, Suite 702
Brooklyn, New York 11201
Counsel for VICTOR CHANI

Charles F. Carnesi, Esq.
1225 Franklin Avenue, Suite 325
Garden City, NY 11530
Counsel for PAUL GALINSON -

19