UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

UNITED STATES OF AMERICA,

    -v-                                                                    No. 05 Cr. 523 (LTS)

AHMED CHOULLAM,

        Defendant.

-----------------------------------------------------------x

**MEMORANDUM ORDER**

        This narcotics conspiracy case was tried to a jury in March and April 2008. The jury found Defendant Ahmed Choullam ("Defendant") guilty pursuant to 21 U.S.C. § 963 of conspiring to import 1,000 kilograms or more of hashish in violation of 21 U.S.C. § 960(b)(1)(G), and guilty pursuant to 21 U.S.C. § 846 of conspiring to distribute or possess with intent to distribute 100 kilograms or more of hashish in violation of 21 U.S.C. § 841(b)(1)(A)(vii). Defendant moves for a judgment of acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure or, in the alternative, for a new trial pursuant to Rule 33. The Court has considered thoroughly the parties' submissions and the trial record and, for the following reasons and substantially the reasons articulated in the Government's opposition brief, denies Defendant's motion in its entirety.

        Rule 29 provides that a defendant may move for a judgment of acquittal following a guilty verdict, and that a court must grant such a motion with respect to any offense for which the evidence is insufficient to sustain a conviction. Fed. R. Crim. P. 29. In considering such a motion, the Court must determine whether, "after viewing the evidence in the light most favorable to the prosecution, . . . <u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>United States v. Pitre</u>, 960 F.2d 1112, 1120 (2d Cir. 1992) (quoting

Jackson v. Virginia, 443 U.S. 307, 319 (1979)).  With respect to convictions for crimes of conspiracy, the Court must bear in mind that "a conspiracy by its very nature is a secretive operation, and it is a rare case 'where all aspects of a conspiracy can be laid bare in court with the precision of a surgeon's scalpel.'"  Id. at 1121 (quoting United States v. Provenzano, 615 F.2d 37, 45 (2d Cir. 1980)).  "[T]here must be some evidence from which it can reasonably be inferred that the person charged with conspiracy knew of the existence of the scheme alleged in the indictment and knowingly joined and participated in it."  Id. (quoting United States v. Gaviria, 740 F.2d 174, 183 (2d Cir. 1984)).

Rule 33 provides, in relevant part, that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires."  Fed. R. Crim. P. 33(a).  "The test is whether it would be manifest injustice to let the guilty verdict stand."  United States v. Sanchez, 969 F.2d 1409, 1414 (2d Cir. 1992) (quotation marks and citation omitted).  In other words, "[t]here must be a real concern that an innocent person may have been convicted."  Id.  A court should grant a motion for a new trial only in exceptional circumstances.  United States v. Jasper, No. 00 Cr. 825, 2003 WL 21709447, *2 (S.D.N.Y. July 23, 2003).

Defendant, while acknowledging that the trial proof included evidence that he agreed to import a 93 kilogram load of hashish, argues principally that the Government failed to provide sufficient evidence to implicate him in some of the other conspiratorial activities detailed in the superseding indictment on which he was arraigned, and on that basis contends that he is entitled to acquittal or a new trial.  That indictment charged six others in addition to Defendant with participation in the charged conspiracies, though the co-defendants did not participate in Defendant Choullam's trial.  Specifically, Defendant focuses on the "Means and Methods" and the "Overt Acts" portions of the superseding indictment, which describe, inter alia, activities allegedly

undertaken by co-defendants Mohamed Chafai ("Chafai") and Victor Chani ("Chani") as part of an international conspiracy spanning several countries, including France. Because the Government did not proffer evidence at trial linking Defendant with Chafai or Chani or any conspiratorial activities that took place in France, Defendant argues, the Court should enter a judgment of acquittal or order a new trial.

Defendant's argument fails as a matter of law. The Government is not obligated to prove the activities alleged in the "Means and Methods" or "Overt Acts" sections of the indictment, because the essential elements of the conspiracy crimes charged in this case consist simply of agreements or understandings to violate the narcotics laws and the knowing participation of Defendant in the conspiracies. See United States v. Story, 891 F.2d 988, 992 (2d Cir. 1989). The fact that the Government included more allegations in the indictment than were necessary does not make such allegations essential elements of the offense required to be proved at trial. See United States v. Rosenthal, 9 F.3d 1016, 1022-23 (2d Cir. 1993) ("While it is the Government's burden to prove the essential elements of a charged crime, allegations in an indictment that go beyond the essential elements which are required for conviction do not increase the Government's burden."). Accordingly, the Court correctly instructed the jury as to the core criminality charged in the indictment (Tr. 998-99), and the Court also correctly instructed the jury that the particulars of the means and methods described in the indictment did not need to be proved.[1] (Tr. 1016.) Therefore, Defendant's argument that the Government's failure to prove allegations detailed in the indictment's "Means and Methods" or "Overt Acts" sections warrant a judgment of acquittal is unavailing.

---

[1] The "Overt Acts" portion of the indictment was redacted from the copy of the indictment given to the jury.

Defendant argues along a similar vein that the Government sought to prove a conspiracy different from that charged in the indictment, suggesting that he was convicted on a theory of criminality that was never presented to a grand jury. When "the terms of the indictment are in effect altered by the presentation of evidence and jury instructions which so modify essential elements of the offense charged that there is a substantial likelihood that the defendant may have been convicted of an offense other than that charged in the indictment," United States v. Delano, 55 F.3d 720, 729 (2d Cir. 1995) (quotation marks and citation omitted), the indictment is said to have been "constructively amended" and a per se violation of the Fifth Amendment has occurred. See id. In determining whether an "essential element" of the offense has been modified, the Second Circuit has "consistently permitted significant flexibility in proof, provided that the defendant was given notice of the 'core of criminality' to be proven at trial." Id. (quotation and citation omitted).

In this case, the Government sought to prove Defendant guilty of participation in a subset of the full scope of conspiratorial activities described in the "Means and Methods" and "Overt Acts" portions of the indictment. The fact that the Government narrowed its proof from the bases set forth in the indictment did not result in proof of "an offense other than that charged in the indictment." Delano, 55 F.3d at 729. See United States v. Patino, 962 F.2d 263, 265 (2d Cir. 1992) ("An indictment is constructively amended when the proof at trial broadens the basis of conviction beyond that charged in the indictment"); United States v. Zingaro, 858 F.2d 94, 99 (2d Cir. 1988) (no constructive amendment where proof narrowed scope of the evidence). Moreover, as already noted, the jury instructions properly informed the jury of the essential elements of the conspiracy crimes with which Defendant was charged (agreement to violate narcotics laws and knowing participation in conspiracy), and these essential elements tracked the language in the indictment. (See, e.g., Indictment ¶ 1 ("the defendants . . . unlawfully, intentionally and knowingly

did combine, conspire, confederate and agree together . . . to violate the narcotics laws").) Therefore, Defendant was given ample notice of the "core of criminality" to be proven at trial, and neither the Government's proof nor the Court's jury instructions deviated from these essential elements. Accordingly, there was no constructive amendment.

Defendant's argument that a variance from the indictment occurred and that substantial prejudice resulted therefrom is similarly unfounded. "A variance occurs when the charging terms of the indictment are left unaltered, but the evidence at trial proves facts materially different from those alleged in the indictment." United States v. Salmonese, 352 F.3d 608, 621 (2d Cir. 2003) (quotation and citation omitted). To prevail on a claim based on variance, the defendant must also demonstrate that the variance between the indictment and the proof at trial was prejudicial, infringing on the "substantial rights" that indictments exist to protect --- "to inform an accused of the charges against him so that he may prepare his defense and to avoid double jeopardy." United States v. Dupre, 462 F.3d 131, 140 (2d Cir. 2006) (quoting United States v. D'Anna, 450 F.2d 1201, 1204 (2d Cir. 1971)).

Because the Government's proof was limited to conspiratorial activity that was described in the indictment, Defendant cannot claim that he did not receive notice of what the Government would seek to prove. See Dupre, 462 F.3d at 142-43 (no prejudice where jury verdict could be based on any of a number of alleged facts in the indictment). Furthermore, Defendant does not dispute that he received the Government's 3500 material, see 18 U.S.C. § 3500, nearly two weeks before opening statements, nor does Defendant dispute that the 3500 material was largely focused on the subset conspiracy that the Government sought to prove at trial. See id. at 141-42 (no prejudice because defense counsel was given notice via 3500 material of intended proof at trial). For these reasons, even if the Government's proof of the subset conspiracy could be

construed to constitute a variance from the broader conspiracy described in the indictment, the Court concludes that no substantial prejudice resulted.

Defendant points to the Government's use of Chani's and Chafai's names and pictures at the start of trial and the Government's follow-up questions to Special Agent Galbadis, who discussed Chani and Chafai at the start of his testimony, as indicative of potential prejudice arising from jury imputation of acts attributed to those individuals in making its determinations regarding Defendant's conduct.[2] The Court permitted the use of their pictures to help jurors familiarize themselves with the numerous individuals discussed. Galbadis's investigation of Defendant developed out of an investigation of Chani and Chafai; it was appropriate to permit the jury to learn of the context of the investigation that led to the charges against Choullam. These limited background references to Chani and Chafai were fleeting in comparison to the volume of testimony the Government elicited with respect to Defendant's involvement with other individuals and therefore posed no danger of unduly confusing the jury as to the scope of Choullam's allegedly criminal activities. Moreover, the Court, in explaining that the acts or statements made by co-conspirators during the existence of a conspiracy involving Defendant and in furtherance of that conspiracy could be considered against Defendant, explicitly specified the individuals whom the Government alleged were involved in the conspiracy the Government sought to prove at trial; those individuals did not include Chani or Chafai. (Tr. 988.) Given the Government's substantive focus

---

[2] Defendant also cites these aspects of the Government's proof to argue that this proof, which was presented at the start of trial, signaled an intent to link Defendant with Chani or Chafai, and argues that the Government failed to prove that Defendant participated in a conspiracy involving those individuals. However, as already discussed, the Government did not seek to prove the full scope of the alleged conspiracy. Defendant was given ample notice of the "core of criminality" to be proven at trial, and the Government was under no obligation to prove allegations in the indictment that went beyond the essential elements required for conviction.

on other individuals and the Court's jury instructions (which specified those individuals by name), the Court finds no basis for Defendant's assertion that there was an undue risk of the jury attributing the acts and statements of Chani or Choullam to Defendant.

Defendant also argues that the Court erred in refusing Defendant's request to give a "multiple conspiracies" charge to the jury. "A multiple conspiracies instruction is generally required where the indictment charges several defendants with one overall conspiracy, but the proof at trial indicates that a jury could reasonably conclude that some of the defendants were only involved in separate conspiracies unrelated to the overall conspiracy charged in the indictment." United States v. Anguiano, 873 F.2d 1314, 1317 (9th Cir. 1989). Even if Defendant is correct that the proof at trial indicated the existence of multiple conspiracies, the Court concludes that Defendant's "substantial rights" were not prejudicially affected by the lack of a multiple conspiracies charge. See United States v. Sir Kue Chin, 534 F.2d 1032, 1035 (2d Cir. 1976) ("the test for reversible error, if two conspiracies have been established instead of one, is whether the variance affects substantial rights.") The only testimony that colorably supports Defendant's argument that multiple conspiracies were proved is the testimony that Defendant worked with Aitbihi and Tromebati, then became dissatisfied and reached out to Rubiz and Dahou, who Defendant argues were in competition with Aitbihi and Tromebati. However, even if the alleged relationships with the two pairs could be construed as two different conspiracies, it was not error to refuse the multiple conspiracies charge because all of these activities were clearly related to the essential elements of the conspiracy crimes charged in the indictment (i.e., Choullam's alleged efforts to import hashish and traffic in hashish in the United States), and moreover, the evidence with respect to Aitbihi and Tromebati was probative of Choullam's intent in dealing with the latter pair. See id. at 1035 (even if multiple conspiracies existed, evidence of involvement with one was

admissible to demonstrate intent with respect to the other). Therefore, there was no undue risk that the jury, on the basis of this evidence, would associate Choullam with any conspiracy not charged in the indictment. Lastly, Defendant stood trial alone, and therefore there was no danger that the jury would confuse the possible involvement of other co-defendants with conspiracies not alleged in the indictment with the conspiracy for which Defendant was charged. See United States v. Anguiano, 873 F.2d 1314, 1317-18 (9th Cir. 1989) ("there is no problem of spillover when, as in this case, the defendant stands trial alone"); Sir Kue Chin, 534 F.2d at 1035 (to same effect); United States v. Corey, 566 F.2d 429, 431 n.3 (2d Cir. 1977) (same); United States v. Galtieri, No. SS 88 Cr. 891, 92 Civ. 2087 (KTD), 1992 WL 245499, *3 (S.D.N.Y. Sept. 17, 1992) (same).

With respect to the quantity of drugs involved, Defendant argues that the Government failed to proffer any evidence to support the jury finding that Defendant conspired to import 1,000 kilograms or more of hashish. Defendant acknowledges that evidence was proffered directly linking him to the importation of a 93 kilogram load. Defendant fails to address, however, evidence including testimony from a cooperating witness that Defendant bragged about his contacts with regular suppliers (Tr. 388), his ability to obtain "tons" rather than mere kilograms (Tr. 642), and his discussions with other individuals about "future" shipments beyond the 93 kilogram load (Tr. 396). Viewing this evidence in the light most favorable to the government, a rational fact-finder could infer that Defendant agreed with others to import quantities of hashish far exceeding that of the single 93 kilogram load. Therefore, Defendant's motion for a judgment of acquittal with respect to the importation conspiracy conviction is denied to the extent Defendant challenges the jury's quantity finding.

Nor was there error in the Court's admission into evidence of photographs of the individuals whose names were mentioned during the trial. The photographs were relevant in

assisting the jury in keeping straight the identities of numerous people about whom there was testimony. Defendant has presented no compelling argument that a juror might instantly conclude that Defendant was guilty of forming agreements with every individual whose photo was admitted into evidence and, in light of the Court's instructions to the jury about the law of conspiracy, the probative value of these photographs outweighed whatever minimal risk of unfair prejudice might have existed. Moreover, the photos were visible to the jury for only a few hours during the testimony of the first witness in a trial that lasted over two weeks.

For all of the aforementioned reasons, there has been no manifest injustice that would warrant the granting of a new trial pursuant to Rule 33, nor does the Court conclude that no rational fact-finder could have rendered the verdicts reached by the jury in this case. Therefore, Defendant's motion is denied.

## CONCLUSION

Defendant's motion pursuant to Rule 29 and Rule 33 of the Federal Rules of Criminal Procedure is denied. Sentencing is currently set for September 12, 2008, at 2:45 p.m. All sentencing submissions are to be made, with a courtesy copy sent to Chambers, by September 5, 2008.

SO ORDERED.

Dated: New York, New York
August 19, 2008

LAURA TAYLOR SWAIN
United States District Judge